IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

| | | |
|---|---|---|
| CALVIN LEE BROWN, Plaintiff, | * | |
| vs. | * | No. 2:12-cv-00011-SWW |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, Defendant. | * | |

OPINION AND ORDER

Plaintiff Calvin Lee Brown seeks judicial review of the final decision of the Commissioner of the Social Security Administration to deny his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons stated below, the Court affirms the Commissioner's decision.

I.

Plaintiff was born on February 15, 1979, and is a high school graduate (Tr. 29, 32) He has past relevant work as an order filler (or warehouse worker), material handler (*i.e.* loading or unloading trucks), and dishwasher/kitchen helper (Tr. 51, 147, 158-161, 173).

Plaintiff applied for DIB and SSI on March 8, 2010, alleging an inability to work since February 27, 2010, due to back problems and high blood pressure (Tr. 14, 28, 118-130, 154, 171). The Commissioner denied Plaintiff's applications initially and on

reconsideration (Tr. 70-76, 79-83). Pursuant to Plaintiff's request, a hearing was held before an administrative law judge (ALJ) on December 7, 2010, at which testimony was received from Plaintiff (who was represented by an attorney) and a vocational expert (VE) (Tr. 25-56).

The ALJ rendered her decision on January 28, 2011, finding that Plaintiff was not disabled within the meaning of the Act (Tr. 11-19). The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[1]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). See also *Jones v. Astrue*, 619 F.3d 963, 967 (8th Cir. 2010).[2]

In her decision, the ALJ found that Plaintiff had medically determinable severe

---

[1] If it is determined at step four that the claimant has sufficient residual functional capacity (RFC) to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[2] At step five, the burden of production shifts to the Commissioner to prove that the claimant retains the RFC to do other kinds of work and that other work exists in substantial numbers in the national economy that the claimant can perform given his RFC. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). However, the ultimate burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Id.*

impairments consisting of a back disorder, hypertension, diabetes, obesity, and sleep apnea (Tr. 13). However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled any of the listed impairments in the Listing of Impairments of Appendix 1, Subpart P, Regulations No. 4 (Tr. 13). The ALJ determined that Plaintiff had the RFC to perform light work[3] reduced by an ability to perform occasional postural actions, such as climbing (but never ladders, ropes, or scaffolds), balancing, stooping, kneeling, crouching, and crawling; the requirement that he be allowed to alternate positions between sitting and standing at will; the requirement that he should avoid exposure to temperature extremes of heat and cold; and the requirement that he avoid exposure to workplace hazards, such as unprotected heights and dangerous machinery (Tr. 14). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined that Plaintiff could not perform any past relevant work but that considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform, such as a compact assembler (40,000 in Arkansas and 240,000 nationally) (Tr. 17-18, 51-54).

Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council. On December 13, 2011, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision as the Commissioner's final

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

administrative decision for purposes of judicial review (Tr. 1-3). Plaintiff thereafter filed this action seeking judicial review of the final decision of the Commissioner to deny his claim for DIB and SSI.

II.

Plaintiff argues for reversal of the Commissioner's decision on the following grounds: (1) the ALJ's decision was not supported by substantial evidence as objective evidence shows Plaintiff meets Listing 1.02 as a result of his lumbar spine and Listing 1.00Q as a result of his obesity; (2) the ALJ erred in taking the state agency's medical examiner's opinion over that of Plaintiff's treating physician; and (3) the ALJ failed to evaluate the severity of Plaintiff's impairments, specifically his ability to stand, walk and sit with his chronic back pain and obesity.

A.

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). In reviewing the record as a whole, the Court must consider both the evidence that detracts from the Commissioner's decision as well as the evidence that supports the decision, but the decision cannot be reversed simply because some evidence may support the opposite conclusion. *Medhaug v. Astrue,* 578 F.3d 805, 813 (8th Cir. 2009).

B.

1.

The Court first addresses Plaintiff's argument that objective evidence shows he meets Listing 1.02 as a result of his lumbar spine and Listing 1.00Q as a result of his obesity. Plaintiff argues he suffers from chronic back pain and has objective findings that include bulging discs and spondylothesis, degenerative disc disease, and right leg radiculopathy, and that his exams show muscle spasms and limitations in his ability to sit and stand related to his chronic back pain and obesity.

Plaintiff has the burden of proof to establish that his condition meets or equals a listing. *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). In order to meet a listing, the impairment must meet or equal all specified medical criteria. *Id*. (citing *Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995)). Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing. *Id*. at 611-612. "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify." *Id*. at 612 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

To meet the requirements of Listing 1.02 (major dysfunction of a joint(s) due to any cause), the following criteria are required: a gross anatomical deformity (*e.g.*, subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space

narrowing, bony destruction, or ankylosis of the affected joint(s), with involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in the inability to perform fine and gross movements effectively as defined in Listing 1.00B2c. See 20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.02. In order to prove an inability to ambulate effectively as defined in Listing 1.00B2b, Plaintiff must show that he is incapable of maintaining a reasonable walking pace over a sufficient distance so that he can independently initiate and carry out activities of daily living. See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.00B2b, 1.02A.

The federal regulations define the effects of obesity as follows:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. pt. 404, Subpt. P, App. 1, § 1.00Q.

Obesity can cause limitation of function, but the functions likely to be limited depend on many factors, including where the excess weight is carried. *Underwood v. Astrue*, Civil No. 11-3044, 2012 WL 3778316, *6 (W.D. Ark. Aug. 30, 2012) (citing SSR

02-1p). An individual may have obesity related limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling, and it may also affect a person's ability to perform postural functions, such as climbing, balance, stooping, and crouching. *Id*. The combined effects of obesity with other impairments may be greater than might be expected without obesity, for example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone. *Id*. (internal quotation marks omitted).

Plaintiff has failed to show that he meets Listing 1.02 as a result of his lumbar spine and Listing 1.00Q as a result of his obesity. Plaintiff testified that he exercises by trying to “walk everyday, at least 15 minutes a day” (Tr. 30) and he indicated in disability documents that he did not require the use of any assistive devices such as a cane or walker and that he could walk, drive a car, and drive a riding lawn mower (Tr. 141, 145, 187, 188). Plaintiff does not point to any medical records indicating that he has an inability to ambulate effectively or perform fine and gross movements effectively, see *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting out of hand claimant’s conclusory assertion that the ALJ failed to consider whether he met certain listings because claimant provided no analysis of the relevant law or facts regarding those listings), and Plaintiff’s medical records show that despite Plaintiff’s complaints of back pain, his musculoskeletal, respiratory, neurological, and cardiovascular systems were generally normal (Tr. 214-217, 222, 224-228, 257, 306). Additionally, an x-ray of Plaintiff’s lumbar spine dated June 8, 2010, merely shows lumbar spasm/strain (Tr. 270).

While Plaintiff is certainly obese,[4] the impact of Plaintiff's obesity was taken into consideration by the ALJ's conclusion that Plaintiff could perform only a limited range of light work. The ALJ found Plaintiff's obesity to be severe (along with his back disorder), performed a specific "individualized assessment" of Plaintiff's obesity, and considered the combined effects of all of Plaintiff's conditions when she determined Plaintiff's RFC and disability status (Tr. 13-17). Further, the ALJ referenced SSR 02-1p and 1.00Q and acknowledged that consideration must be given to any additional and cumulative effects of Plaintiff's obesity (Tr. 16). The burden is on Plaintiff to present evidence and demonstrate the combined effects of his obesity and other impairments. Plaintiff has not offered any evidence that his obesity made his other impairments more severe so that he met a Listing. Plaintiff has thus failed to demonstrate that he meets the requirements of Listing 1.02 and 1.00Q.

2.

Plaintiff next argues the ALJ erred in taking the state agency's medical examiner's opinion over that of Plaintiff's treating physician, Dr. M.A. McDaniel. Dr. McDaniel wrote a "To Whom It May Concern" letter on December 10, 2010, in which he stated that he had been providing medical treatment to Plaintiff for several conditions (Tr. 420). Dr. McDaniel opined that, based on Plaintiff's medical conditions, age, education, and work

---

[4] Plaintiff is approximately 6'5" and weighs approximately 400 pounds (Tr. 29, 43). Plaintiff testified at his hearing that his weight was 450 pounds but that he lost 50 pounds (Tr. 29, 43). He testified that his goal in getting his weight controlled is "[j]ust to continue to walk every day" (Tr. 43).

experience, Plaintiff was unable to perform any substantial gainful employment for a period of time expecting to last 12 months and was precluded from doing any type of work (Tr. 420).

"Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citing 20 C.F.R. § 404.1527(c)(2)). "Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight." *Id.* "'However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id*. (quoting *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010)). "Ultimately, the ALJ must 'give good reasons' to explain the weight given the treating physician's opinion." *Id*. (quoting 20 C.F.R. § 404.1527(c)(2)).

Here, the ALJ gave good reasons for not giving controlling weight to Dr. McDaniel's opinions, namely that Dr. McDaniel's "conclusory statement" that Plaintiff is unable to work "lacks the specificity of functional limitations that lead to the doctor's opinion, and therefore does very little to assist the undersigned in determining the claimant's limitations" (Tr. 16). Diagnosis of a condition does not equate to a disability, see *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730-31 (8th Cir. 2003) (finding that a diagnosis alone has minor significance and that the dispositive question remains

whether the claimaint's functioning in various areas is markedly impaired, not what one doctor or another labels his disorder), and a physician's statement that a claimant is disabled or unable to work is not, as noted by the ALJ (Tr. 16), the type of "medical opinion" to which the Commissioner gives controlling weight. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). See also *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002) (noting that statements that a claimant could not be gainfully employed are not medical opinions, but rather opinions on the application of a statute, a task assigned solely to the discretion of the Commissioner). Rather, a treating physician's opinion will be granted controlling weight provided if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008). The Court notes that Dr. McDaniel's progress notes dated in December 2009 and March 2010, demonstrate that Plaintiff's cardiovascular, neurological, and pulmonary systems were normal (Tr. 214-217, 222-228) and Dr. McDaniel noted "overall findings normal" regarding Plaintiff's musculoskeletal system (Tr. 228).

Plaintiff alleges that the ALJ improperly gave more weight to the opinions of state agency physicians than she did to Dr. McDaniel's opinion but the determination by a physician from a state agency is to be treated by the ALJ as "expert opinion evidence" and given "appropriate weight." See *Jones ex. rel. Morris v. Barnhart*, 315 F.3d 974, 978 (8th Cir. 2003) (quoting SSR 96-6p). The ALJ gave appropriate weight to opinions of the state agency physicians and did not "disqualify Dr. McDaniel's opinion over non-

examining non-treating physicians....” Pl.’s Br. at 11. Indeed, the ALJ determined that Plaintiff was more limited than the state agency physicians indicated in that the ALJ also found that Plaintiff would require the ability to alternate positions between sitting and standing at will (Tr. 15).

3.

Finally, Plaintiff argues the ALJ failed to evaluate the severity of Plaintiff’s impairments, specifically his ability to stand, walk and sit with his obesity and back pain. The Court concludes that the ALJ properly evaluated the severity of Plaintiff’s impairments, including his complaints of pain,[5] and that her RFC assessment is adequately supported by the medical evidence. The ALJ made proper credibility determinations and did not err in determining that Plaintiff had the RFC for a limited range of light work.

III.

It is not the task of this Court to review the evidence and make an independent decision. *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts her

---

[5] When analyzing a claimant's subjective complaints of pain, the ALJ must examine: (1) the claimant's daily activities, (2) the duration, frequency and intensity of the pain, (3) precipitating and aggravating factors, (4) the dosage, effectiveness and side effects of any medication, and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). Although the ALJ did not cite the Eighth Circuit’s decision in *Polaski*, the ALJ did cite the proper regulations and considered the relevant credibility factors. See *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (ALJ’s failure to cite *Polaski* is not reversible error where the proper regulations were cited and the ALJ considered the relevant credibility factors).

findings. *Id*. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Id*. The Court finds for the foregoing reasons that there is substantial evidence in the record as a whole which supports the decision of the ALJ. Accordingly, the Court affirms the final determination of the Commissioner and dismisses Plaintiff's complaint with prejudice. Judgment will be entered accordingly.

IT IS SO ORDERED this 11th day of February 2013.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE